IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WILLIAM RANDALL CARNEY, | § | |
|     Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-CV-996-P |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
|     Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, William Randall Carney, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice, against the director of that division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be dismissed in part and denied in part.

**I. BACKGROUND**

Petitioner was charged in Comanche County, Texas, Case Nos. 3788, 3789, and 3790, with three counts of aggravated sexual assault of a child younger than 14 years of age. His jury trial commenced on October 5, 2015, after which the jury found him guilty as charged and assessed his punishment at 50 years' confinement on each count. Clerk's R. 37, ECF No. 23–9. Petitioner's convictions were affirmed on appeal, the Texas Court of Criminal Appeals refused his petition for discretionary review, and the United States Supreme Court denied writ of certiorari. Electronic R., ECF No. 23–1; *Carney v. Texas,* 139 S. Ct. 75 (2018). Petitioner also challenged his convictions in three postconviction state habeas-corpus

applications, one for each conviction, which were denied by the Texas Court of Criminal Appeals without written order. SHR01[1] 4–19, ECF No. 23–21; SHR02 6–18, ECF No. 23–25; SHR03 6–19, ECF No. 23–29; Actions Taken, ECF Nos. 23–18, 23–22, 23–26.

The state appellate court summarized the background of the case as follows:

> [Petitioner] dated A.T.'s grandmother for about three months in 2013. While they dated, [Petitioner] lived with A.T.'s grandmother for about three weeks. During that time, A.T. and her little brother stayed with their grandmother. [Petitioner] slept in the same bed as the grandmother, while A.T. and her little brother slept on a couch in the living room. In August 2014, while A.T. was at her grandmother's house, A.T. told her grandmother that she needed "to tell [her] a secret." A.T. proceeded to tell her grandmother that [Petitioner] "had been touching her, and . . . that he went to the couch when [her little brother] was asleep laying beside her, [and] stuck his finger inside of her." At that point, the grandmother told A.T. that she needed to tell her mother about the abuse. A.T.'s mother then relayed that information to law enforcement.
>
> . . .
>
> [At trial,] A.T. testified that [Petitioner] inappropriately touched her on more than one occasion. . . . The State's other witnesses corroborated A.T.'s testimony. The grandmother testified that A.T. told her that [Petitioner] "stuck his finger inside of her." Tasha Lawson, a therapist at the Eastland County Crisis Center, who provided counseling services to A.T., testified that A.T. had "exhibit[ed] symptoms of . . . trauma." Lawson said that A.T. was fearful, concerned that "other people will want to have sex with" her, and concerned that she was "unable to defend" herself. Additionally, Stacey Henley, a SANE nurse at Cook Children's Medical Center, who examined A.T., testified that some of her findings during the exam "could . . . be indicative of possible sexual abuse." Henley also testified that A.T. told her that [Petitioner] had sexually abused her "a lot of times."

Mem. Op. 2, 6–7, ECF No. 23–4.

---

[1]"SHR01," "SHR02," and "SHR03" refer to the records of Petitioner's state habeas proceedings in WR-90,304–01, WR-90,304–02, and WR-90,304–03, respectively.

## II.  ISSUES

In eight grounds for relief, Petitioner raises the following claims, verbatim:

(1)  Some of the persons on the jury panel were unqualified because of bias or life experiences;

(2)  The trial court abused its discretion by admitting hearsay testimony outside the scope of the outcry statute;

(3)  Trial court abused its discretion by permitting the state to cross-examine character witness about extraneous offenses not relevant to the character trait about which she testified;

(4)  The evidence is factually insufficient to prove the allegations;

(5)  Prosecutorial misconduct: Violation of due process and right to a fair trial and sentencing considerations;

(6)  Was denied the fundamental right to testify in my own behalf. Violation of Art 1 § 10 of the Texas Constitution and Amendment 6 and 14 of the U.S. Constitution;

(7)  Ineffective assistance of counsel: Violation of Art 1 § 10 of Texas Constitution and Amed. [sic] 6 of the U.S. Constitution; and

(8)  Cumulative effect.

Pet. 6–7, 11–12, ECF No. 1.

## III.  RULE 5 STATEMENT

Respondent does not believe that the petition is time barred or subject to the successive-petition bar but does believe that grounds three and four are unexhausted and procedurally barred. Resp't's Answer 4, ECF No. 24.

3

## IV. EXHAUSTION AND PROCEDURAL DEFAULT

Respondent asserts that Petitioner's grounds three and four are unexhausted and procedurally defaulted and should be dismissed with prejudice. Resp't's Answer 5–9, ECF No. 24. Petitioners seeking habeas-corpus relief under § 2254 are required to exhaust all claims in the state courts before requesting federal habeas relief. 28 U.S.C. § 2254(b)(1), (c); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir. 1999). A state petitioner may satisfy the exhaustion requirement by presenting both the factual and legal substance of his claims to the Texas Court of Criminal Appeals in either a petition for discretionary review or a properly-filed state habeas-corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West 2015); *Alexander v. Johnson,* 163 F.3d 906, 908–09 (5th Cir. 1998); *Bd. of Pardons & Paroles v. Ct. of Appeals for the Eighth Dist.,* 910 S.W.2d 481, 484 (Tex. Crim. App. 1995).

A review of the record reflects that grounds three and four were not raised in Petitioner's petition for discretionary review or his post-conviction state habeas applications. Thus, the claims were not presented to the state's highest court for consideration on the merits and are clearly unexhausted for purposes § 2254(b)(1)(A). Under the Texas abuse-of-the-writ doctrine, however, Petitioner cannot now return to state court for purposes of exhausting the claims. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (West 2015). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *See Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997).

4

A petitioner may overcome a procedural bar by demonstrating either cause and prejudice for the default or a fundamental miscarriage of justice as a result of the court's refusal to consider the claim. *Id.* Petitioner makes no effort to overcome the procedural bar and, instead, accepts and agrees that the claims are unexhausted and procedurally barred and asks the Court to dismiss the claims to avoid a mixed petition. Pet'r's Reply 2, ECF No. 28. Thus, grounds three and four should be dismissed with prejudice as unexhausted and procedurally barred.

Additionally, Petitioner raised grounds one, five, and six in his state-habeas applications, however the state habeas court entered the following findings regarding the claims:

1. They should have been raised on direct appeal;
2. There is insufficient evidence presented to prove the allegations; and
3. They are without merit.

SHR01 49, ECF No. 23–21; SHR02 42, ECF No. 23–25; SHR03 41, ECF No. 23–29.

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claims when the last state court to consider the claims expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 729, (1991); *Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999). This is so even where the state court has also ruled in the alternative on the merits of the federal claims. Thus, the fact that the state court addressed the merits of the claims as an alternative ground

5

for its decision does not act to vitiate the procedural bar. *See Hughes v. Dretke,* 412 F.3d 582, 592 (5th Cir. 2005); *Cook v. Lynaugh,* 821 F.2d 1072, 1077 (5th Cir. 1987); *Corwin v. Johnson,* 150 F.3d 467, 473 (5th Cir. 1998).

In Texas, record-based claims that could have been raised on direct appeal, but were not, will not be considered on state habeas review proceedings and are forfeited. *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The Fifth Circuit recognizes this state rule as an adequate procedural bar to federal habeas review. *Dorsey v. Quarterman,* 494 F.3d 527, 532 (5th Cir. 2007); *Brewer v. Quarterman,* 466 F.3d 344, 347 (5th Cir. 2006). The state court clearly relied upon the rule to deny the claims and that, in turn, represents an adequate state procedural bar to federal habeas review of the claims. Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, grounds one, five, and six are procedurally barred from the Court's review.

## V. DISCUSSION

### A. Standard of Review

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. §

6

2254(d)(1)–(2); *Harrington v. Richter,* 562 U.S. 86, 100–01 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The presumption of correctness applies to both express and implied factual findings. *Young v. Dretke,* 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001). It is the petitioner's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

If the most recent state court to consider a constitutional issue provides express findings of fact, legal conclusions, or a "reasoned opinion," a federal habeas corpus court must "review[ ] the specific reasons given by the state court and defer[ ] to those reasons if they are reasonable." *Wilson v. Sellers,* — U.S. —, 138 S. Ct. 1188, 1191–92 (2018). In other words, a federal court should "'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Id.* If, on the other hand, there are no express findings of fact, legal conclusions, or "reasoned opinion," a federal court may imply fact findings consistent with the state court's disposition and presume "that the state court adjudicated the claim on the merits in the

7

absence of any indication or state-law procedural principles to the contrary" and applied the correct "clearly established federal law" in making its decision. *Johnson v. Williams,* 568 U.S. 289, 298 (2013); *Richter,* 562 U.S. at 99; *Townsend v. Sain,* 372 U.S. 293, 314 (1963); *Schaetzle v. Cockrell,* 343 F.3d 440, 444 (5th Cir. 2004); *Pondexter v. Dretke,* 346 F.3d 142, 148 (5th Cir. 2003); *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002).

### B. Trial Court Error

Under his second ground, Petitioner claims that the trial court abused its discretion by admitting hearsay testimony regarding "statements and expressions" of the child victim outside the scope of Texas Code of Criminal Procedure article 38.072, § 2(a)(1)(A) (Hearsay Statement of Certain Abuse Victims). Pet. 6, ECF No. 1; Pet'r's Mem. 7–8, ECF No. 2. In the last reasoned opinion on the matter, the state appellate court addressed the issue as follows:

> [Petitioner] asserts that the trial court abused its discretion when it admitted portions of the grandmother's testimony that, [Petitioner] alleges, fall outside the scope of Article 38.072 of the Texas Code of Criminal Procedure. Article 38.072 provides an exception to the hearsay rule for outcry testimony in prosecutions for certain offenses. The exception applies if a child makes a statement that describes the alleged offense to a person over eighteen years of age for the first time and if certain prerequisites are met. The provisions of the statute are mandatory and must be complied with in order for an outcry statement to be admissible over a hearsay objection.
>
> [Petitioner] does not contend that the State failed to comply with the statutory prerequisites when it offered the outcry statement. His complaint is that the grandmother was allowed to testify beyond A.T.'s description of the offense and that parts of the grandmother's testimony were therefore outside the scope of Article 38.072. Specifically, [Petitioner] alleges that the following portions of the grandmother's testimony fell outside the scope of Article

8

> 38.072: A.T. told her grandmother that she did not want her grandmother to tell A.T.'s mother about the abuse because A.T. was afraid she would not be able to stay with her grandmother again; A.T. asked her grandmother if she believed her; A.T. "had tears running down her face"; A.T. was crying; and A.T. did not tell anyone sooner because she was scared.
>
> A trial court does not err when it admits an outcry witness's statements if those statements describe "the circumstances leading up to the outcry statement and its details." The portions of the grandmother's testimony to which [Petitioner] objects do not describe any act of abuse in particular, but are contextual statements that describe the circumstances surrounding A.T.'s outcry. Accordingly, we conclude that the portions of the grandmother's testimony to which [Petitioner] objects describe "the circumstances leading up to the outcry and its details"; therefore, the trial court did not err when it admitted those portions of the grandmother's testimony.

Mem. Op. 2–4, ECF No. 23–4 (citations omitted).

This claim involves a matter of state law. Petitioner did not explicitly assert a federal constitutional claim or make any argument on direct appeal that supports a federal constitutional claim nor does he do so here. *See Duncan v. Henry,* 513 U.S. 364, 366 (1995) (holding where petitioner raises only an issue of state evidentiary law, he has not fairly presented a claim that the evidentiary violation is also a violation of due process of law under the Fourteenth Amendment). Thus, to the extent Petitioner merely asserts a violation of article 38.072 of the Texas Code of Criminal Procedure, no ground for federal habeas relief is presented. Federal habeas relief does not lie for errors of state law. *See Swarthout v. Cooke,* 562 U.S. 216, 219 (2011).

### C. Ineffective Assistance of Counsel

Under his seventh ground, Petitioner claims that he received ineffective assistance of

9

trial counsel because counsel failed to

    (1)    challenge prospective jurors because of their strong bias or "life situation";

    (2)    properly impeach the state's witnesses by using police reports to expose inconsistencies between the reports and their trial testimony;

    (3)    introduce any expert testimony regarding the physical signs of sexual abuse to rebut the state's expert testimony;

    (4)    object to the testimony of A.T.'s counselor Tasha Lawson; and

    (5)    object to the prosecution's liberal use of leading questions and misstatements of the evidence.

Pet. 18–23, ECF No. 1.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393–95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial

10

strategy. *Id*. at 668, 688–89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance-of-counsel claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100–01 (quoting *Williams,* 529 U.S. at 410)); *Bell v. Cone*, 535 U.S. 685, 698–99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner raised one or more of his ineffective-assistance claims in his state habeas applications, and the state habeas judge conducted a hearing by affidavit. Trial counsel, Judson Woodley, responded to Petitioner's allegations in an affidavit as follows:

Ground One:

I conducted the voir dire examination of the jury panel. At the conclusion of the voir dire examination, [Petitioner] and I together decided how to most effectively exercise our ten peremptory strikes. My recollection is that Juror No. 10 was not subject to a challenge for cause. With regard to not exercising a peremptory strike on Juror No. 10, my assumption is that there were worse jurors that were more hostile to the defense that we had to use our ten peremptory strikes on.

Ground Two:

> This ground alleges prosecutorial misconduct, but there may be included therein a complaint that trial counsel failed to make objections to leading questions and inappropriate arguments during closing arguments. I try to be mindful during trials not to object to material, that although it may be objectionable, would likely be overruled. Further, excessive superficial objections usually annoy the jury more than the objectionable material is actually probative.
>
> Ground Three:
>
> [Petitioner] complains that he was not permitted to testify, or that I made the decision that he would not testify. With respect to [Petitioner]'s claim that I did not allow him to testify, this is false. Prior to trial, [Petitioner] made certain admissions to me and others concerning certain elements of the charges [Petitioner] was facing. As such, I could not ethically allow [Petitioner] to testify under oath in a manner inconsistent with his pretrial admissions. On the other hand, if [Petitioner] took the stand and testified truthfully, he most certainly would have been convicted.
>
> Typically, if I know my client is not going to testify, I want the jury to think that I am responsible for his decision not to testify. That is why I include these statements during voir dire and closing arguments. I do not want the jury to blame my client for his failure to testify.
>
> Ground Four:
>
> [Petitioner] puts forth an array of complaints for which [Petitioner] alleges trial counsel was cumulatively ineffective throughout the entire judicial process. Some of the complaints made under Ground Four were also alleged in Ground One, Ground Two, or Ground Three, and I will not repeat my response to those complaints here. The only complaint under Ground Four that I believe merits a response is my decision to not call medical or psychological expert witnesses to testify for the defense. With regard to a medical expert, I consulted a SANE nurse who read the SANE examination of the child victim. I determined that her testimony would not be beneficial to the defense, I did not believe a psychological expert was needed in the defense of this case.

SHR03 35–36, ECF No. 23–29.

Based on the documentary record and counsel's affidavit, which the court found

12

credible, the state habeas court found that Petitioner "failed to carry his burden of proof" and, in turn, the Texas Court of Criminal Appeals denied relief without written order. *Id.* at 41. To the extent more particularized findings and conclusions of law were not made, this Court will infer fact findings consistent with the state court's disposition of Petitioner's ineffective-assistance claims and, absent any evidence that incorrect standards were applied, assume that the state courts applied the *Strickland* standard when considering Petitioner's claims. Having done so, the state courts' application of *Strickland* was not objectively unreasonable.

Petitioner claims counsel was ineffective by failing to challenge prospective Juror Nos. 1, 21, 23, 24, 29, 31, 33, and 34 because of their strong bias revealed during voir dire and prospective Juror No. 10 because of her life situation—she works with victims and has a child who was a victim of sexual assault. Pet. 12, ECF No. 1; Pet'r's Mem. 18, ECF No. 2. A juror is biased if his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. *See Hatten v. Quarterman,* 570 F.3d 595, 600 (5th Cir. 2009); *Soria v. Johnson,* 207 F. 3d 232, 242 (5th Cir. 2000). Bias may be actual or implied: It may be revealed through express admission or by proof of specific facts showing such a close connection to the circumstances at hand that bias must be presumed as a matter of law. *See Brooks v. Dretke,* 444 F.3d 328, 329–30 (5th Cir. 2006).

The record reflects that, during general voir dire, defense counsel posed the following three questions to the venire panel in an attempt to determine prejudice or bias among them

13

and asked the veniremembers to respond on a scale of one to ten:

    (1)    If a person is accused of sexual assault of a child he must be guilty (with one strongly agreeing with the statement);

    (2)    It's better to let nine guilty people go free than to send one innocent person to prison (with one strongly disagreeing with the statement); and

    (3)    If a person is found guilty of sexual assault of a child I could give full and fair consideration to the minimum punishment, five years in prison (with one strongly disagreeing with the statement).

Reporter's R., vol. 2, 51–59, ECF No. 23–7.

In his state habeas applications, Petitioner merely claimed that "most of the jurors in [his] case were in fact biased." SHR01 9, ECF No. 23–21; SHR02 11, ECF No. 23–25; SHR03 11, ECF No. 23–29. He did not specify which jurors demonstrated bias or present the "Juror Strike List" he now presents in this federal proceeding. Federal habeas review is limited to the factual allegations used to support a federal claim in state court, as well as the record that was before the state courts. *See Cullen v. Pinholster,* 563 U.S. 170, 182 (2011); *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997). In any event, having reviewed the record of the voir dire proceedings, it is impossible to determine how and which jurors answered the "scaled" questions. Thus, the record is insufficient to establish bias or to overcome the presumption that counsel's decisions regarding how to "most effectively exercise" his challenges was reasonable trial strategy.

Nor does Petitioner demonstrate that prospective Juror No. 10 harbored disqualifying bias. There is no evidence of actual bias. She expressly denied before the judge and attorneys

that her circumstances would cause her to be "more unfair." Reporter's R., vol. 2, 85, ECF No. 23–7. And, Petitioner does not show specific facts demonstrating such a close connection between the juror and his case that bias can be implied as a matter of law. If a juror is not biased, counsel's failure to challenge that juror does not support a claim for ineffective assistance of counsel. *Virgil v. Dretke,* 446 F.3d 598, 608–09 (5th Cir. 2006).

Petitioner claims that counsel failed to properly impeach state witnesses using police reports to expose inconsistencies. Pet. 12, ECF No. 1; Pet'r's Mem. 18–19, ECF No. 2. Specifically, Petitioner asserts that according to the police report dated August 16, 2014, A.T.'s mother "said when [A.T.] woke up, [she] had said to her mother; 'mommy, I'm tired of the nightmares' and then gave a detailed account of what happened." Pet'r's Mem. 19, ECF No. 2. Petitioner contends that, if that were true, the state called the wrong outcry witness. Pet'r's Mem. 19, ECF No. 2. Petitioner also points out that at trial "the story changed to the dreams began at Christmas of 2013 and the outcry changed to 'well, my mom said that [A.T.] needed to talk to me.'" *Id.* Additionally, he points out that the police report state that "[A.T.'s grandmother] had fallen asleep and left [Petitioner] and the children in another room while they watched T.V., yet at trial the story changed to 'they were asleep on the couch and [Petitioner] came out of the bedroom.'" *Id.* In the Court's view, the alleged discrepancies between the testimony of witnesses and data in the police report "approach inanity" and counsel's failure to impeach the witnesses based on those discrepancies does not constitute ineffective assistance of counsel. *See Jones v. Cain,* 227 F.3d 228, 230–31 (5th

Cir. 2000). Furthermore, the record reflects that counsel did attempt to impeach A.T.'s mother's testimony during cross-examination regarding the matters he raises with the statements attributed to her in the police report. Reporter's R., vol. 2, 153–55, ECF No. 23–7.

Petitioner claims that counsel was ineffective by failing to procure and present medical and psychological experts to rebut the SANE nurse's testimony. Pet. 12, ECF No. 1; Pet'r's Mem. 23, ECF No. 2. However, counsel did consult with a SANE nurse and determined that her testimony would not have been beneficial. Furthermore, complaints of uncalled witnesses are not favored in federal habeas-corpus review because allegations of what the witness's testimony would have been are largely speculative. *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002); *Sayre v. Anderson,* 238 F.3d 631, 635–36 (5th Cir. 2001); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985). Therefore, to show the prejudice required to support an ineffective-assistance claim premised on the failure to call a witness, a petitioner must show that the witness was available and would in fact have testified at trial in a manner beneficial to the defense. *Evans,* 285 F.2d at 377. This showing is required for claims regarding both uncalled lay and expert witnesses alike. *See Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). Petitioner failed to identify any uncalled expert witnesses in state court or submit any affidavits or other evidence that they would have been willing to testify on his behalf and that their testimony would have been favorable. That omission is fatal to his claim. *Sayre,* 238 F.3d at 636 (complaint of uncalled witnesses failed where petitioner failed to present affidavits from the missing witnesses).

16

Petitioner claims that counsel was ineffective by failing to object to Tasha Lawson's testimony as inadmissible hearsay because she was not qualified—*i.e.,* she is not a medical professional, for purposes of Texas Rule of Evidence 803(4). Pet. 12, ECF No. 1; Pet'r's Mem. 25, ECF No. 2. Counsel did not respond to this allegation. Finding no evidence in the record explaining why counsel did not object, the court presumes counsel had a plausible reason for his omission. Further, under state law, it was not necessary that Lawson be a medical professional. *See Taylor v. State,* 268 S.W.3d 571, 587 (Tex. Crim. App. 2008). Therefore, had counsel objected to Lawson's qualifications, the objection likely would have been overruled. Counsel is not required to make meritless objections. *See Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997).

Lastly, Petitioner claims that counsel was ineffective by failing to object to the prosecution's use of leading questions and misstatements of the evidence. Pet. 12, ECF No. 1. This claim is insufficient to raise a federal constitutional violation. Petitioner does not direct the Court to any specific instance where counsel should have objected, demonstrate that an objection would have been sustained, or establish that the failure to object prejudiced the defense. *See United States v. Oakley,* 827 F.2d 1023, 1025 (5th Cir. 1987) (providing counsel's ineffectiveness depends on whether a motion or an objection would have been granted or sustained had it been made). And, counsel's strategy to limit his objections to avoid annoying the jury is a reasonable trial tactic. *See Burnett v. Collins,* 982 F.2d 922, 930 (5th Cir. 1993) (providing "failure to object to leading questions and the like is generally a

matter of trial strategy as to which we will not second guess counsel").

### F. Cumulative Error

Under his eighth ground, Petitioner claims that the cumulation of errors during his trial deprived him of his rights to due process and a fair trial. Pet. 12, ECF No. 1; Pet'r's Mem. 23, ECF No. 23, ECF No. 2. "[T]he cumulative error doctrine . . . provides that an aggregation of non-reversible errors (*i.e.,* plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998). However, the cumulative error doctrine necessitates reversal only in rare instances, and the Fifth Circuit has stated that "the possibility of cumulative error is often acknowledged but practically never found persuasive." *United States v. Delgado,* 672 F.3d 320, 343 (5th Cir. 2012) (citing *Derden v. McNeel,* 978 F.2d 1453, 1456 (5th Cir. 1992)). A petitioner must show that (1) the individual errors involve matters of constitutional dimension rather than state law, (2) the errors were not procedurally defaulted for habeas purposes, and (3) the errors so infected the entire trial that the resulting conviction violates due process. *Derden,* 978 F.2d at 1454. *See also Coble v. Quarterman,* 496 F.3d 430, 440 (5th Cir. 2012) (rejecting cumulative error claim where the petitioner failed to identify errors of a constitutional dimension). Meritless claims or claims that are not prejudicial, as in this case, cannot be cumulated, regardless of the total number raised. *Westley v. Johnson,* 83 F.3d 714, 726 (5th Cir. 1996).

## VI. CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED** with prejudice as to grounds three and four and **DENIED** as to the remaining grounds. A certificate of appealability is also **DENIED**.

**SO ORDERED** on this 5th day of March, 2021.

Mark T. Pittman
UNITED STATES DISTRICT JUDGE